India Lin Bodien, WSBA #44898
INDIA LIN BODIEN, ATTORNEY AT LAW
2522 North Proctor Street, #387
Tacoma, Washington 98406-5338
Telephone: (253) 212-7913
Facsimile: (253)276-0081
india@indialinbodienlaw.com

Craig J. Ackermann, WSBA #53330
Brian Denlinger, WSBA #53177
ACKERMANN & TILAJEF, P.C.
2602 North Proctor Street, #205
Tacoma, Washington, 98406
Telephone:    (310) 277-0614
Facsimile:    (310) 277-0635
cja@ackermanntilajef.com
bd@ackermanntilajef.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| ASHLIE HARRIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CJ STAR, LLC AN IDAHO LIMITED LIABILITY COMPANY, an Idaho Limited Liability Company, CARL'S JR. RESTAURANTS, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO: _____<br><br>**PLAINTIFF'S ANTITRUST CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT [15 U.S.C. § 1, *et. seq.*]; and**<br><br>**(2) UNFAIR COMPETITION [Washington Unfair Business Practices Act, RCW 19.86, *et. seq.*];**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ASHLIE HARRIS ("Plaintiff Harris"), individually and on behalf of all those similarly situated, by and through her counsel, brings this Class Action Complaint ("Complaint")

against Defendants CJ STAR, LLC AN IDAHO LIMITED LIABILITY COMPANY ("CJ Star"), CARL'S JR. RESTAURANTS, LLC ("Carl's Jr."); and Does 1 through 10 (who collectively shall be referred to hereinafter as "Defendants"), on personal knowledge with respect to herself and her own acts, and on information and belief as to other matters, alleges as follows:

## I. <u>NATURE OF ACTION</u>

1.      Plaintiff Harris, on behalf of herself, on behalf of the Washington general public, and as a class action on behalf of Defendants' managerial-level employees from July 12, 2014 through the present ("Class Members"), seeks millions of dollars in lost wages, plus triple damages, and interest, caused by Defendants' long-standing and illegal mutual non-solicitation agreements (i.e., agreements that Carl's Jr. franchisees could not solicit for employment the managerial-level employees of Carl's Jr. and/or of other Carl's Jr. franchisees)  and no-hire agreements (i.e., agreements that Carl's Jr. franchisees could not hire the managerial-level employees of Carl's Jr. and/or other Carl's Jr. franchisees) that were all entered into by Carl's Jr. franchises throughout Washington State for decades and that had the intended and actual effect of significantly reducing Class Members' wages and salaries.  The genesis of the no-hire and non-solicitation agreements at issue were franchise agreements between Carl's Jr. and its franchisees, and between its franchisees, including, upon information and belief, CJ Star.

2.      This illegal conspiracy among and between Defendants and other Carl's Jr. franchisees to not employ, seek to employ, or to recruit one another's employees, in order to thereby suppress their wages, was not known, to Plaintiff and the Class Members until  July 12, 2018, when the Washington State Attorney General ("AG") revealed as part of its then-pending investigation into illegal behavior by some of the largest fast food franchises in Washington and

the United States, including Carl's Jr., that Carl's Jr. would no longer enforce provisions in its franchise agreements that prevented managerial-level workers from being hired or solicited by other Carl's Jr. franchisees. In sum, Defendants engaged in *per se* violations of the Washington Unfair Competition Act and the Sherman Act by entering into no-hire and non-solicitation agreements, for the express purpose of depressing and/or reducing market-based wages and benefit increases for Class Members that are typically associated with the active recruitment of employees and workers in a competitive industry.   While protecting and enhancing their profits, Defendants, through their no-hire and non-solicitation agreements, robbed Class Members millions of dollars-worth of wages for which Plaintiff and the Class now seek relief.

## II. <u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over the subject of this action pursuant to 15 U.S.C. §§ 4 and 16, as well as 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction over the claims brought under the laws of the State of Washington pursuant to 28 U.S.C. § 1367(a), since the matters at the heart of the Washington Unfair Competition Claims form part of the same case or controversy.

4.      Venue as to each Defendant is proper in this judicial district, pursuant to 15 U.S.C. §§ 22 and 28 and 28 U.S.C. §1391(b)(1) and (2), because Defendants transact business and/or has transacted business during the relevant time period within the counties encompassed by the jurisdiction of the United States District Court for the Eastern District of Washington. Defendants do sufficient business in this District to be subject to personal jurisdiction herein, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

*Plaintiff's Antitrust Class Action Complaint*

### III. THE PARTIES

5.     Plaintiff Ashlie Harris, who at all relevant times was a resident of Washington, is a former employee of Defendant CJ Star. Plaintiff Harris worked as a shift leader at CJ Star's Spokane, Washington Carl's Jr. store at 6740 North Division Street at the end of 2014 and as a shift leader at CJ Star's Carl's Jr. store located at 1617 West Northwest Boulevard in Spokane, Washington, from approximately November, 2017 to April, 2018. As a result, Plaintiff Harris was subject to and victimized by the non-solicitation and no-hire conspiracy between and among the Defendants, resulting in her having lost wages.

6.     Defendant CJ Star is an Idaho limited liability company. Defendant CJ Star does business in Washington State as Carl's Jr., with its principal place of business located at 13601 West McMillan Road, Suite 102, in Boise, Idaho.  Upon information and belief, Defendant CJ Star operates approximately nine stores in Washington doing business as Carl's Jr. Upon information and belief, Defendant CJ Star entered into a franchise agreement with Defendant Carl's Jr. that contained no-hire and non-solicitation provisions.

7.     Defendant Carl's Jr. is a Delaware limited liability company. Upon information and belief, Defendant Carl's Jr.'s principal place of business is located at 6700 Tower Cir, Suite 1000 in Franklin, Tennessee. Defendant Carl Jr.'s is a franchisor. Defendant Carl's Jr. is in the business of fast food sandwich stores, which it franchises throughout Washington and the United States.  Upon information and belief, Defendant Carl's Jr. entered into agreements with its franchisees, including CJ Star, that contained no-hire and non-solicitation provisions.

8.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names.  Does 1 through 10 are the

*Plaintiff's Antitrust Class Action*
*Complaint*

other largest franchisees of Carl's Jr. in Washington State based on number of employees employed. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein in that they are additional co-conspirators.  Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as Does when such identities become known. Defendants and the Does 1-10 shall collectively be referred to as "Defendants."

9.      Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  Furthermore, Defendants in all respects acted pursuant to the mutual non-solicitation and no-hire agreements that were intended to suppress and had the effect of suppressing wages and salaries for the Class Members.

## IV. FACTS EVIDENCING THE CONSPIRACY

10.      Defendants had a longstanding agreement to control their managerial-level employees' wages and mobility by agreeing not employ or solicit each other's managerial-level employees.

11.      The specific provisions of Defendants' franchise agreements that violated federal and state antitrust laws are found at Section 17.C.(2)(b) (agreement to not "Knowingly employ or seek to employ any person then employed by CJR[1] or any franchisee of CJR as a shift leader or higher, or otherwise directly or indirectly induce such person to leave his or her employment").[2]

---

[1] On information and belief, "CJR" refers to Defendant Carl's Jr. Restaurants, LLC.
[2] *See In Re: Franchise No Poaching Provisions*, Carl's Jr. Restaurants, LLC Assurance of Discontinuance, Case No. 18-2-17230-6SEA, Exhibit B (Dkt. No. 1) (July 12, 2018) (hereinafter "Carl's Jr. AOD").

*Plaintiff's Antitrust Class Action Complaint*

1    These provisions are also found at Section 12.C.(2)(b) of the franchisee development

2    agreement.[3]

3        12.    The mutual non-poaching and non-solicitation agreement itself constituted a *per

4    se* violation of the Sherman Antitrust Act and Washington's Unfair Business Practices Act

5    between Defendants for decades until it was brought to light by the AG's investigation

6    commencing in 2018 in the course of the AG's investigation into similarly illegal mutual non-

7    solicitation and anti-poach agreements entered into between several of the largest fast food

8    franchisors operating in Washington and the United States.

9        13.    Upon information and belief, CJ Star and other franchisees, that own a total of

10   approximately 33 Carl's Jr. stores in Washington state, entered into franchisee agreements with

11   the no-hire and non-solicitation terms set forth above.

12       14.    The AG investigated the non-solicitation and no-hire agreement issued by Carl's

13   Jr. to its franchisees and found that Carl's Jr. and its franchisees' conduct constituted a contract,

14   combination, or conspiracy in restraint of trade in violation of the Washington Unfair Business

15   Practices Act – Consumer Protection Act, RCW 19.86.030. The AG concluded that "[f]or

16   decades, the franchise agreements entered into between Carl's Jr. and its franchisees have

17   provided that franchisees subject to such agreements may not solicit the managerial-level

18   employees of Carl's Jr. franchisees…or to hire the managerial-level employees of Carl's Jr. or of

19   other Carl's Jr. franchisees."[4]

20       15.    As set forth herein, upon information and belief, all of the Defendants entered into

21   the mutual non-solicitation agreements with the no-hire and non-solicitation terms above, with

---

[3] Id.
[4] Carl's Jr. AOD, § 2.2.

*Plaintiff's Antitrust Class Action
Complaint*

6

the common interest and intention to keep their managerial-level employees' wage costs down, so that profits continued to rise or at least not be undercut by rising salaries across the industry. As a result, Defendants engaged in anti-competitive behavior in advancement of a common and illegal goal of profiting at the expense of competitive market-based salaries.

16.     Defendants agreements unreasonably restrained trade in violation of the Sherman Act 15 U.S.C. § 1, *et seq*.,  and constituted unfair competition and unfair practices in violation of Washington's Unfair Business Practices law, 19.86, *et seq*. Plaintiff Ashlie Harris, on behalf of herself and on behalf of the Class defined herein, seeks to recover the difference between the wages and salaries that Class Members were paid and what Class Members would have been paid in a competitive market, in the absence of Defendants' unlawful agreements, treble damages, attorneys fees, and interest, allowed under the law.

## V. HARM TO COMPETITION AND ANTITRUST INJURY

17.     Defendants are in the business of operating fast food sandwich stores where sandwiches and other fast food items are prepared and sold by crewmembers, who are managed by shift leaders and other managerial-level employees. In order to operate, Defendants owned other stores in Washington and hired shift leaders and other managerial-level employees in their stores to oversee all restaurant activities.

18.     No-hire and non-solicitation agreements create downward pressure on fast food worker wages. No-hire and non-solicitation agreements restrict worker mobility, which prevents low-wage workers from seeking and obtaining higher pay. This artificially suppresses fast food worker wages. In fact, fast food worker wages have remained stagnant.

19.     Unrestricted competition and the Free Market are the foundations of the American economic system. That is because "[f]ree and open markets are the foundation of a vibrant

economy. Just as competition among sellers in an open marketplace gives consumers the benefits of lower prices, higher quality products and services, more choices, and greater innovation, competition among employer helps actual and potential employees through higher wages, better benefits, or other terms of employment." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 2.

20.    Upon information and belief, Defendants conspired not to actively solicit or hire each other's managerial-level employees and workers as part of one overarching conspiracy to suppress the compensation of their managerial-level employees, including Plaintiff and Class Members.  The desired effect was obtained.  Defendants' conspiracy suppressed Plaintiff's and the Class's compensation and restricted competition in the labor markets in which Plaintiff and the other members of the Class sold their services.  It did so through an overarching agreement concerning mutual non-solicitation and no-hiring.

21.    Concerning the non-solicitation agreements, active solicitations have a significant beneficial impact for individual employees' compensation.  As understood by Defendants, active recruitment by rival employers, here other franchisees doing business as Carl's Jr., often include enticing offers that exceed an employee's wages, salary, and/or benefits, thereby incentivizing the employee to leave his or her current employment in order to receive greater compensation for his or her labor, or alternatively, allowing the employee to negotiate increased compensation from his or her current employer.  Employees receiving active solicitation offers often inform other employees of the offer(s) they received, spreading information about higher wage and salary levels that can similarly lead to movement for the purposes of higher salary and wages and/or negotiation by those other employees with their current employer or others for greater compensation.

22.     Active solicitation similarly affects compensation practices by employers. A franchisee that actively solicits other franchisees' employees or other workers will learn whether their offered compensation is enough to attract their competitors' employees, and may increase the offers to make their own company and its salaries more competitive in the marketplace. Similarly, companies losing or at risk of losing employees to competitors engaged in active recruitment of employees or workers associated with their competitors may preemptively increase their employees' compensation in order to reduce their competitors' appeal.

23.     Defendants' efforts to maintain internal equity coupled with their non-solicitation agreements ensured that their conspiracy caused the compensation of all their employees to be suppressed.

## VI.     INTERSTATE COMMERCE

24.      During the Class Period, Defendants employed Plaintiff and other Class Members in Washington and numerous other states.

25.     States compete to attract low wage workers, including fast food workers, leading employment in the industry to cross state lines.

26.     Both Defendants and Plaintiff and other Class Members view labor competition in the industry to be nationwide. Defendants considered each other's wages to be competitively relevant regardless of location, and many Class Members moved between states to pursue opportunities at Defendants' stores.

27.     Defendants' conduct substantially affected interstate commerce throughout the United States and caused antitrust injury throughout the United States.

## VII.    CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a Class consisting of:

> All persons who were employed in the position of shift leader or higher by CJ Star, LLC an Idaho Limited Liability Company, or Carl's Jr. Restaurants, LLC, or any of the ten largest franchises of Carl's Jr. in Washington State at any time from July 12, 2014 through the conclusion of this action (the "Class Period").[5]

29.     Plaintiff believes there are more than 500 current and former employees in the Class. Given Defendants' systemic failure to comply with United States and Washington laws outlined in this case, the members of the Class are so numerous that joinder of all members is impractical.   The Class is ascertainable from either Defendants' employment and hiring records.

30.     Plaintiff's claims are typical of the claims of the members of the Class, because all Class Members are or were managerial-level employees who sustained damages arising out of (a) Defendants' illegal mutual no-hire and anti-solicitation arrangements in violation of Section 1 of the Sherman Act that resulted in wage suppression for all of the Class Members; and (b) Defendants' unfair business practices in violation of Washington law.

31.     Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no conflict of interest with any member of the Class. Plaintiff has retained counsel competent and experienced in complex class action litigation with the resources and expertise necessary to litigate this case through to conclusion.

32.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to Plaintiff and Class Members are:

---

[5] Plaintiff reserves the right to modify the class definition at a later date to conform to new facts learned, including the properly named entity Defendant(s).

*Plaintiff's Antitrust Class Action
Complaint*

10

a.    Whether Defendants agreed not to actively recruit each other's managerial-level employees in positions held by the Class Members;

b.    Whether the mutual non-solicitation and anti-poaching agreements between Defendants were *per se* violations of the Sherman Act, 15 U.S.C. § 1, *et seq.*;

c.    Whether Defendants violated the Sherman Act by agreeing to not actively recruit or solicit one another's managerial-level workers in positions held by Class Members;

d.    Whether Defendants violated RCW 19.86, *et seq.*, by entering into agreements to not actively recruit each other's workers in managerial-level positions held by Class Members;

e.    whether and the extent to which Defendants' conduct suppressed wages and salaries below competitive levels;

f.    whether Plaintiff and the other Class Members suffered injury as a result of Defendants' agreements;

g.    whether any such injury constitutes antitrust injury;

h.    whether Class Members are entitled to treble damages; and

i.    the measure of damages suffered by Plaintiff and the Class.

33.    Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would

*Plaintiff's Antitrust Class Action Complaint*

preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class Members are readily identifiable from Defendants' employee rosters, payroll records or other company records.

34.    Defendants' actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

35.    Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendants.

## VIII.   STATUTE OF LIMITATIONS AND DEFENDANTS' CONTINUING VIOLATION

36.     Defendants' conspiracy was a continuing violation in which Defendants repeatedly invaded Plaintiff's and Class Members' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

37.    Before July 12, 2018, Plaintiff and the members of the Class had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of any conspiracy until at the earliest July 12, 2018 when the investigation by the AG into non-solicitation agreements among fast food franchisees/franchisors including Carl's Jr. was first revealed publicly. This case is filed within four years of the moment when it was first revealed that the AG investigation had

*Plaintiff's Antitrust Class Action Complaint*

unearthed that Carl's Jr. had engaged in mutual non-solicitation and no-hire agreements with CJ Star and other Carl's Jr. franchisees.

38.    Defendants engaged in a conspiracy that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy among Carl's Jr. and franchisees to restrict competition for Class Members' services through non-solicitation and no-hire agreements.

## IX.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION ONE OF SHERMAN ACT
## [15 U.S.C. § 1, *et seq*.]

### (On Behalf of Plaintiff and the Class)

39.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

40.    Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination and conspiracy in restraint of trade, in violation of 15 U.S.C. § 1, *et seq*. Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation agreements and no-hire agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services.

41.    According to the Department of Justice ("DOJ") and Federal Trade Commission ("FTC"), "…no-poaching agreements, among employers…are *per se* illegal under the antitrust laws." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 3. "It is unlawful for competitors to expressly or implicitly agree not to compete with one another, even if they are motivated by a desire to reduce costs." *Id*. at p. 2.

*Plaintiff's Antitrust Class Action
Complaint*

13

42.     Defendants' conduct injured Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services.

43.     Defendants' agreements are per se violations of the Sherman Act.

44.     Plaintiff seeks the relief set forth below, including underpaid and treble damages.

## SECOND CAUSE OF ACTION

### UNFAIR COMPETITION AND UNLAWFUL BUSINESS PRACTICE
### [Washington Unfair Business Practices Act, 19.86 *et seq.*]

45.      Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

46.     Revised Code of Washington Section 19.86, *et seq.*, prohibits unfair or deceptive methods of competition or acts or practices. Specifically, RCW 19.86.030 prohibits contracts, combinations, or conspiracies that restrain trade or commerce.

47.     As stated above, the Washington State Attorney General investigated Carl's Jr. and determined that the no-hire and non-solicitation provisions of its franchise agreements, by and between itself and its franchisees, constituted a contract, combination, or conspiracy in restraint of trade in violation of the Washington Unfair Business Practices Act – Consumer Protection Act, RCW 19.86.030.

48.     Through its conspiracy and actions as alleged herein, Defendants' efforts to restrain competition for and suppress compensation of their employees through their franchise agreements constitutes unfair competition and unlawful and unfair business practices in violation of the Washington Unfair Business Practices Act, RCW 19.86, *et seq.* Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation and no-hire agreements, all with the purpose and effect of suppressing Class Members' compensation and

restraining competition in the market for Class Members' services. Defendants' illegal conspiracy was substantially injurious to Plaintiff and the Class Members.

49.    Defendants' acts were unfair, unlawful, and/or unconscionable, both in their own right.

50.    Defendants' conduct injured Plaintiff and other Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services, allowing Defendants to unlawfully retain money that otherwise would have been paid to Plaintiff and other Class Members. Plaintiff and other Class Members are therefore persons who have suffered injury in fact and lost money or property as a result of the unfair competition under RCW 19.86.090.

51.    The harm to Plaintiff and members of the Class in being denied payment for their services in the amount of higher wages and salaries that they would have received in the absence of the conspiracy outweighs the utility, if any, of Defendants' illegal non-solicitation and non-poaching agreements and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of RCW 19.86, *et seq*.

52.    Pursuant to RCW 19.86.090, any person who is injured by a violation of RCW 19.86.030 may bring a civil action to recover actual damages, treble damages, and attorneys' fees and costs.

53.    Plaintiff seeks the relief set forth below.

## X.    JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

*Plaintiff's Antitrust Class Action Complaint*

## XI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ashlie Harris, on behalf of herself and a class of all others similarly situated, requests that the Court enter an order or judgment against Defendants including the following:

a.  Certification of the class described herein pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.  Appointment of Plaintiff Ashlie Harris as Class Representative and her counsel of record as Class Counsel;

c.  Compensatory damages in an amount to be proven at trial and trebled thereafter;

d.  Pre-judgment and post-judgment interest as provided for by law or allowed in equity;

e.   The costs of bringing this suit, including reasonable attorneys' fees and costs;

f.  An incentive award to compensate Plaintiff Ashlie Harris for her efforts in pursuit of this litigation;

g.  Interest under Washington law; and

h.  All other relief to which Plaintiff Ashlie Harris and the Class may be entitled at law or in equity.

Dated August 3, 2018.

Respectfully submitted,
India Lin Bodien, Attorney at Law
Ackermann & Tilajef, P.C.

_____

By: India Lin Bodien, WSBA #44898
INDIA LIN BODIEN, ATTORNEY AT LAW
2522 North Proctor Street, #387
Tacoma, Washington 98406-5338
Telephone: (253) 212-7913
Fascimile: (253)276-0081
india@indialinbodienlaw.com

Craig J. Ackermann, WSBA #53330

*Plaintiff's Antitrust Class Action Complaint*

1

Brian Denlinger, WSBA #53177
ACKERMANN & TILAJEF, P.C.
2602 North Proctor Street, #205
Tacoma, Washington, 98406
Telephone:      (310) 277-0614
Facsimile:      (310) 277-0635
cja@ackermanntilajef.com
bd@ackermanntilajef.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff's Antitrust Class Action Complaint*