MAKAN DELRAHIM
  Assistant Attorney General
MICHAEL F. MURRAY
  Deputy Assistant Attorney General
WILLIAM J. RINNER
  Chief of Staff and Senior Counsel
KRISTEN C. LIMARZI
MARY HELEN WIMBERLY
  Attorneys
U.S. Department of Justice, Antitrust Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
Telephone:  (202) 514-4510

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH STIGAR, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DOUGH DOUGH, INC. et al.,<br><br>                    Defendants. | No. 2:18-cv-00244-SAB<br><br><br>STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA |
| MYRRIAH RICHMOND and RAYMOND ROGERS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>BERGEY PULLMAN INC. et al.,<br><br>                    Defendants. | No. 2:18-cv-00246-SAB<br><br><br>STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA |
| ASHLIE HARRIS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CJ STAR, LLC et al.,<br><br>                    Defendants. | No. 2:18-cv-00247-SAB<br><br><br>STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA |

UNITED STATES' STATEMENT OF INTEREST

# TABLE OF CONTENTS

<u>Page</u>

Interest of the United States ............................................................................... 1

Statement .......................................................................................................... 1

I. Legal Background ..................................................................................... 1

II. Factual and Procedural Background .......................................................... 3

Argument ........................................................................................................... 5

The Standards for Evaluating Whether Plaintiffs Have Stated a Claim Under
Section 1 Based on No-Poach Agreements in the Franchise Context ..................... 5

A. Plaintiffs Must Plausibly Plead Concerted Action ............................................ 5

B. Plaintiffs Must Plausibly Plead an Unreasonable Restraint of Trade .............. 8

1. Naked no-poach agreements between competitors are per se unlawful ...... 9

2. Most franchisor-franchisee restraints are subject to the rule of reason ..... 11

3. Alleged hub-and-spoke franchise conspiracies are likely subject to the
ancillary-restraints doctrine ...................................................................... 13

4. When no-poach restrictions within a franchise system warrant rule of
reason analysis, they warrant full rule of reason analysis, not a "quick
look" ........................................................................................................ 16

Conclusion ........................................................................................................ 18

Certificate of Service ......................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Am. Ad Mgmt, Inc. v. GTE Corp.*,
    92 F.3d 781 (9th Cir. 1996)...................................................................5

*Am. Needle, Inc. v. Nat'l Football League*,
    560 U.S. 183 (2010) ............................................................ 5, 6, 7, 8

*Aya Healthcare Servs. Inc. v. AMN Healthcare, Inc.*,
    No. 17cv205, 2018 WL 3032552 (S.D. Cal. June 19, 2018) ..............16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................14

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
    485 U.S. 717 (1988) .........................................................................2

*Butler v. Jimmy John's Franchise, LLC*,
    331 F. Supp. 3d 786 (S.D. Ill. 2008) ...................................... 8, 14, 17

*Cal. Dental Ass'n v. FTC*,
    526 U.S. 756 (1999) .......................................................................17

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ....................................................................11, 12

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) .........................................................................5

*Deslandes v. McDonald's USA, LLC*,
    No. 17-C-4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018)........8, 17

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002).......................................................15, 16

*Hammes v. AAMCO Transmissions, Inc.*,
    33 F.3d 774 (7th Cir. 1994)...............................................................9

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010)............................................................13

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ...........................................10

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)............................................................14

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ........................................................13, 14

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
407 F.3d 1027 (9th Cir. 2005) ................................................................7

*Kotteakos v. United States*,
328 U.S. 750 (1946) ...............................................................................16

*L.A. Mem'l Coliseum Comm'n v. NFL*,
726 F.2d 1381 (9th Cir. 1984) ...........................................................3, 16

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) ..............................................................................2, 9

*Lektro-Vend Corp. v. Vendo Co.*,
660 F.2d 255 (7th Cir. 1981) ..................................................................3

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ...................................................................3

*NCAA v. Bd. of Regents of Univ. of Okla.*,
468 U.S. 85 (1984) ...................................................................................2

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) .............................................................. 2, 11, 12

*Palmer v. BRG of Ga., Inc.*,
498 U.S. 46 (1990) ...................................................................................9

*Polk Bros., Inc. v. Forest City Enters., Inc.*,
776 F.2d 185 (7th Cir. 1985) ..................................................................3

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
792 F.2d 210 (D.C. Cir. 1986) ...............................................................3

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) ....................................................................................2

*Texaco Inc. v. Dagher*,
547 U.S. 1 (2006) ...................................................................................16

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ................................................................14

*Toys "R" Us, Inc. v. FTC*,
221 F.3d 928 (7th Cir. 2000) ................................................................14

*United States v. Addyston Pipe & Steel Co.*,
85 F. 271 (6th Cir. 1898) .........................................................................3

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015)..................................................................14, 15

*United States v. Brown*,
   936 F.2d 1042 (9th Cir. 1991)...............................................................2, 9

*United States v. Coop. Theatres of Ohio, Inc.*,
   845 F.2d 1367 (6th Cir. 1988)...................................................................9

*United States v. eBay, Inc.*,
   968 F. Supp. 2d 1030 (N.D. Cal. 2013) ...............................................10

*United States v. Gen. Motors Corp.*,
   384 U.S. 127 (1966) ...........................................................................11, 15

*United States v. Topco Assocs.*,
   405 U.S. 596 (1972)...................................................................................9

*Williams v. I.B. Fischer Nevada*,
   999 F.2d 445 (9th Cir. 1993)....................................................................7

*Yi v. SK Bakeries, LLC*,
   No. 18-5627 RJB (W.D. Wash. Nov. 13, 2008) (ECF No. 33) ........ 7, 8, 17

**STATUTES:**

15 U.S.C. § 1 ......................................................................................1, 5

28 U.S.C. § 517 ..........................................................................................1

**OTHER AUTHORITIES:**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*

   Vol. 2A (4th ed. 2014) ..........................................................................9

   Vol 6 (3d ed. 2010) ..............................................................................14

   Vol. 7 (4th ed. 2017) ..............................................................................6

   Vol. 12 (Hovenkamp only) (3d ed. 2012)........................................10, 13

Robert H. Bork, *Ancillary Restraints and the Sherman Act*,
   15 Antitrust L.J. 211 (1959) ....................................................................3

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidance for Human Resource Professionals* (Oct. 2016),
   https://www.justice.gov/atr/file/903511/download................................9

Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*,
   66 Antitrust L.J. 701 (1998) ....................................................................3

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this notice pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal court.

The United States enforces the federal antitrust laws and has a strong interest in their correct application.  The United States has a particular interest in the standard for judging the legality of "no-poach agreements"—that is, agreements among employers not to solicit or hire each other's employees—under Section 1 of the Sherman Act, 15 U.S.C. § 1.  The United States has repeatedly enforced the antitrust laws against no-poach agreements, *see United States v. Knorr-Bremse AG*, No. 18-cv-747, Final Judgment, Doc. 19 (D.D.C. July 11, 2018); *United States v. eBay, Inc.*, No. 12-cv-5869, Final Judgment, Doc. 66 (N.D. Cal. Sept. 2, 2014); *United States v. Adobe Sys., Inc.*, No. 1:10-cv-1629, Final Judgment, Doc. 17 (D.D.C. Mar. 18, 2011); *United States v. Lucasfilm Ltd.*, No. 1:10-cv-2220, Final Judgment, Doc. 6-1 (D.D.C. May 9, 2011), and recently filed a statement of interest on the issue, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-798, Doc. 158 (W.D. Pa. Feb. 8, 2019).

Here, the United States describes the legal standards governing whether a plaintiff has stated a claim that a no-poach agreement in a commercial-franchise relationship violates federal antitrust law.

**STATEMENT**

**I.  Legal Background**

Section 1 of the Sherman Act declares "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States, . . . illegal." 15 U.S.C. § 1.  Restraints subject to this prohibition are generally categorized as either

UNITED STATES' STATEMENT OF INTEREST – 1

1   "horizontal" or "vertical."  Restraints imposed by agreements between "competitors

2   on the way in which they will compete with each other" are horizontal.  *NCAA v. Bd.*

3   *of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984).  Restraints "imposed by

4   agreement between firms at different levels of distribution" (such as manufacturers

5   and distributors) on matters over which they do not compete are vertical.  *Ohio v. Am.*

6   *Express Co.*, 138 S. Ct. 2274, 2284 (2018) (quoting *Bus. Elecs. Corp. v. Sharp Elecs.*

7   *Corp.*, 485 U.S. 717, 730 (1988)).

8        The legality of many restraints is "analyzed under a 'rule of reason,' according

9   to which the finder of fact must decide whether the questioned practice imposes an

10  unreasonable restraint on competition, taking into account a variety of factors,

11  including specific information about the relevant business, its condition before and

12  after the restraint was imposed, and the restraint's history, nature, and effect."  *State*

13  *Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  "[N]early every . . . vertical restraint . . .

14  should be assessed under the rule of reason."  *Am. Express*, 138 S. Ct. at 2284.

15       Yet the "rule of reason does not govern all restraints."  *Leegin Creative Leather*

16  *Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  Rather, some "types of

17  restraints" have "such predictable and pernicious anticompetitive effect, and such

18  limited potential for procompetitive benefit, that they are deemed unlawful *per se*."

19  *Khan*, 522 U.S. at 10.  By "treating categories of restraints as necessarily illegal," the

20  per se rule "eliminates the need to study the reasonableness of an individual restraint."

21  *Leegin*, 551 U.S. at 886; *see United States v. Brown*, 936 F.2d 1042, 1045 (9th Cir.

22  1991) (similar).  "Typically only 'horizontal' restraints . . . qualify as unreasonable *per*

23  *se*."  *Am. Express*, 138 S. Ct. at 2283-84.

24

UNITED STATES' STATEMENT OF INTEREST – 2

Moreover, under the "ancillary restraints doctrine," a horizontal agreement ordinarily condemned as per se unlawful is "exempt from the per se rule" if it is ancillary to a separate, legitimate venture between the competitors. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) (Bork, J.). Ancillary restraints are subject to the rule of reason. *E.g., id.*

"To be ancillary," an "agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction," and reasonably necessary to "make the main transaction more effective in accomplishing its purpose." *Id.* at 224, 227; *accord Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 335-38 (2d Cir. 2008) (Sotomayor, J., concurring); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985); *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1395 (9th Cir. 1984); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265, 269 (7th Cir. 1981); *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898) (Taft, J.), *aff'd*, 175 U.S. 211 (1899); Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*, 66 Antitrust L.J. 701, 705-09 (1998); Robert H. Bork, *Ancillary Restraints and the Sherman Act*, 15 Antitrust L.J. 211, 212 (1959).

## II. Factual And Procedural Background

The three operative complaints in these cases are substantially similar and allege the existence of agreements among a franchisor and its franchisees that purportedly violate Section 1 of the Sherman Act (as well as state law, which we do not address). The plaintiffs were formerly employed by franchisees of Auntie Anne's, Arby's, and Carl's Jr. *Stigar* Compl. ¶¶ 5-6 (18cv244 ECF No. 1 at 4); *Richmond* First Am. Compl. ¶¶ 5-7 (18cv246 ECF No. 5 at 4); *Harris* Compl. ¶¶ 5-6 (18cv247 ECF No. 1 at 3-4). They challenge provisions of the franchise agreements that contain

UNITED STATES' STATEMENT OF INTEREST – 3

commitments such as: the franchisees "will not employ[] or seek to employ an employee of [the franchisor] or another franchisee." *Stigar* Compl. ¶ 11 (18cv244 ECF No. 1 at 5); *see Richmond* First Am. Compl. ¶ 13 (18cv246 ECF No. 5 at 6) (similar); *Harris* Compl. ¶ 11 (18cv247 ECF No. 1 at 5-6) (similar).

The complaint alleges that the franchisor and franchisee defendants in each case entered the agreements "with the common interest and intention to keep their employees' wage costs down, so that profits continued to rise or at least not be undercut by rising salaries across the industry." *Stigar* Compl. ¶ 15 (18cv244 ECF No. 1 at 7); *Richmond* First Am. Compl. ¶ 17 (18cv246 ECF No. 5 at 7); *see Harris* Compl. ¶ 15 (18cv247 ECF No. 1 at 6-7) (similar).  Furthermore, the plaintiffs claim, "[t]he desired effect was obtained"; each "conspiracy suppressed [their] compensation and restricted competition in the labor markets in which [they] sold their services." *Stigar* Compl. ¶ 20 (18cv244 ECF No. 1 at 8); *Richmond* First Am. Compl. ¶ 22 (18cv246 ECF No. 5 at 8-9); *Harris* Compl. ¶ 20 (18cv247 ECF No. 1 at 8).

Currently pending are the defendants' opposed motions to dismiss.  Among other things, the parties have divergent views concerning two overarching legal issues: (1) whether franchisors and franchisees can conspire with each other within the meaning of Section 1 of the Sherman Act, and (2) which legal rule governs whether no-poach agreements among franchisors and their franchisees violate Section 1.  We submit this Statement of Interest primarily to present the United States' views on this second issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## ARGUMENT

**The Standards For Evaluating Whether Plaintiffs Have Stated A Claim Under Section 1 Based On No-Poach Agreements In The Franchise Context**

"In order to prevail on a cause of action for violation of 15 U.S.C. § 1, a plaintiff must show (1) there was an agreement, conspiracy, or combination between two or more entities; (2) the agreement was an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce." *Am. Ad Mgmt, Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996). Only the first two elements are at issue in these cases.

### A. Plaintiffs Must Plausibly Plead Concerted Action

Section 1 applies only to conduct that is a "contract, combination . . . , or conspiracy," 15 U.S.C. § 1—what is referred to as "concerted action." "The question whether an arrangement is a contract, combination, or conspiracy is different from and antecedent to the question whether it unreasonably restrains trade." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010). To qualify as concerted action, the alleged arrangement must be (i) an agreement (ii) between two or more entities capable of engaging in concerted action. *Id.* at 189-90. Because the parties do not dispute the law applicable to (i), we do not address it in detail.

The parties do dispute (ii), whether there are here two or more entities capable of engaging in concerted action. Entities are legally capable of engaging in concerted action if the arrangement alleged to exist between them "'deprives the marketplace of independent centers of decisionmaking' . . . and thus of actual or potential competition." *Id.* at 195 (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)). Determining whether this standard is met requires "a functional

UNITED STATES' STATEMENT OF INTEREST – 5

consideration of how the parties involved in the alleged anticompetitive conduct actually operate."  *Id.* at 191.

The law treats certain combinations of actors as not "actually operating" as independent centers of decisionmaking (at least in the antitrust sense).  *See id.* at 195-96.  For example, the "internally coordinated conduct of a corporation and one of its unincorporated divisions" and "the coordinated activity of a parent and its wholly owned subsidiary" are not that of independent centers of decision-making.  *Copperweld*, 467 U.S. at 770, 771.

The status of other combinations of actors is fact-dependent.  Members of joint ventures and similar associations are generally "substantial, independently owned, and independently managed business[es]" with distinct and potentially competing interests.  *Am. Needle*, 560 U.S. at 196.  The actions of these types of associations are unilateral when they concern matters over which the members' separate businesses would not otherwise act independently.  For example, "if the [American Bar Association] decides to have its annual meeting in San Francisco, or to enlarge its committee on the accreditation of law schools, these decisions would be treated as unilateral" because such decisions do not eliminate the independent "market behavior of individual members."  7 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1477, at 338 (4th ed. 2017) (*Antitrust Law*).

In contrast, courts have consistently applied Section 1 to the conduct of joint ventures and other cooperative arrangements when they restrain actual or potential competition among their members.  For example, in 2010, the Supreme Court held that the National Football League Properties (NFLP), a separate entity formed by the

UNITED STATES' STATEMENT OF INTEREST – 6

32 teams in the National Football League, engaged in concerted action when it made decisions about the licensing of the teams' trademarks and other "separately owned intellectual property." *Am. Needle*, 560 U.S. at 201.  The Court in *American Needle* explained that the teams were acting through the NFLP, but "not like the components of a single firm that act to maximize the firm's profits." *Id.* at 201.  Instead, the teams "remain[ed] separately controlled, potential competitors with economic interests that are distinct from [the jointly owned corporation's] financial well-being." *Id.*

*Copperweld* and *American Needle* are the relevant authority in considering whether a franchisee and franchisor should be treated as a single entity under the antitrust laws.  Because franchisees are not usually corporate divisions or wholly owned subsidiaries of their franchisors, a court must not presume that they should be treated as a single entity under *Copperweld*.  Instead, a court should evaluate how the alleged business relationship operates in practice with respect to the entities' economic interests.  *See id.* at 195-96.  This approach is consistent with Ninth Circuit case law, which even before *American Needle*'s mandate of functional analysis rejected a bright-line approach to franchisor-franchisee and similar relationships, instead making clear that the concerted-activity inquiry "requires an examination of the particular facts of each case." *Williams v. I.B. Fischer Nevada*, 999 F.2d 445, 447 (9th Cir. 1993); *accord Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005).

Franchise agreements in the fast-food industry typically authorize the franchisee to use the franchisor's "trademarks, signage, and proprietary ingredients and products." *E.g.*, Order Denying Defendants' Motion to Dismiss at 2, *Yi v. SK Bakeries, LLC*, No. 18-5627 RJB, Doc. 33 (W.D. Wash. Nov. 13, 2008) (attached Ex.

UNITED STATES' STATEMENT OF INTEREST – 7

A to Plaintiffs' Requests for Judicial Notice, 18cv244 ECF No. 18; 18cv246 ECF

No. 28; 18cv247 ECF No. 21) (*Yi* Order).  The franchisees at times retain "significant

amounts of independence," *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d

786, 789 (S.D. Ill. 2008), such as responsibility "for the day-to-day operations of their

respective restaurants and for, among other things, employment matters," *Deslandes v.*

*McDonald's USA, LLC*, No. 17-C-4857, 2018 WL 3105955, at *2 (N.D. Ill. June 25,

2018).  Pleaded facts such as these, demonstrating that the franchisees' hiring interests

may not be perfectly aligned with those of the franchisors or other franchisees, tend to

show that a franchisor and its franchisees are legally capable of concerted action.

They suggest the absence of the "single center of decisionmaking" and "aggregation

of economic power" indicative of unilateral action.  *Am. Needle*, 560 U.S. at 194, 196;

*accord Yi* Order at 5-7.  In short, whether the franchisor is capable of concerted action

with the franchisees depends on whether it has "distinct" "economic interests" from

the franchisees. *Am. Needle*, 560 U.S. at 201.

**B. Plaintiffs Must Plausibly Plead An Unreasonable Restraint Of Trade**

To sufficiently plead the second element of a Section 1 claim, a complaint must

plausibly allege an unreasonable restraint of trade under the per se rule or the rule of

reason.  Determining which rule applies requires an evaluation of both the orientation

of the alleged restraint (horizontal or vertical) and its substantive terms (here,

restraints in the category of no-poach agreements).  In summary, agreements between

labor-market competitors not to poach each other's employees are per se unlawful

under Section 1 unless they are reasonably necessary to a separate, legitimate business

transaction or collaboration between the companies, in which case the rule of reason

1  applies.  The rule of reason also applies to no-poach agreements between non-

2  competitors.

3      **1.  Naked no-poach agreements between competitors are per se unlawful**

4      Agreements among competitors to "divide markets" are per se unlawful.

5  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  Indeed,

6  an agreement of this type "is a classic per se antitrust violation."  *United States v.*

7  *Brown*, 936 F.2d 1042, 1045 (9th Cir. 1991) (citing *United States v. Topco Assocs.*,

8  405 U.S. 596, 608 (1972)).  The Supreme Court has "reiterated time and time again

9  that '[agreements allocating markets among competitors] are naked restraints of trade

10  with no purpose except stifling of competition.'  Such limitations are *per se* violations

11  of the Sherman Act."  *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 (1990) (per

12  curiam) (quoting *Topco Assocs.*, 405 U.S. at 608).

13      The prohibition against market division or allocation extends to agreements

14  "between two competitors to refrain from seeking business from each other's existing

15  accounts."  *United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1372-73

16  (6th Cir. 1988).  Such an agreement is manifestly anticompetitive because it forces the

17  allocated customer to "face[] a monopoly seller" rather than reap the benefits of

18  competition between sellers that would result in lower prices or better product

19  offerings.  *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994).

20      Just as an agreement among competing sellers to allocate customers eliminates

21  competition for those customers, an agreement among competing employers to

22  allocate employees eliminates competition for those employees.  2A *Antitrust Law*

23  ¶ 352c, at 288-89 (4th ed. 2014); U.S. Dep't of Justice & Fed. Trade Comm'n,

24  *Antitrust Guidance for Human Resource Professionals* 4 (Oct. 2016),

UNITED STATES' STATEMENT OF INTEREST – 9

https://www.justice.gov/atr/file/903511/download.  As with other types of allocation agreements, an employee who is a victim of an allocation agreement among employers cannot reap the benefits of competition among those employers that may result in higher wages or better terms of employment.  No-poach agreements among competing employers have almost identical anticompetitive effects to wage-fixing agreements:  they enable the employers to avoid competing over wages and other terms of employment offered to the affected employees.  As a leading antitrust treatise puts it, "[a]n agreement among employers that they will not compete against each other for the services of a particular employee or prospective employee is, in fact, a service division agreement, analogous to a product division agreement" and is "generally unlawful per se" if not negotiated as part of a collective bargaining process. 12 *Antitrust Law* ¶ 2013b, at 148 (3d ed. 2012).

For these reasons, courts have held that plaintiffs' well-pleaded allegations of no-poach agreements among competitors in labor markets suffice to state claims of per se violations of Section 1.  In *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030 (N.D. Cal. 2013), for example, the district court held that the United States sufficiently pleaded a per se violation by alleging a naked agreement between eBay and Intuit not to solicit or hire each other's employees.  The court denied a motion to dismiss, ruling that the alleged restraint was "a 'classic' horizontal market division" and that "[a]ntitrust law does not treat employment markets differently from other markets in this respect."  *Id.* at 1039-40.  The defendants ultimately entered into a consent decree enjoining the unlawful agreement.  *See United States v. eBay, Inc.*, No. 12-CV-05869-EJD-PSG, Final Judgment, Doc. 66, at 2 (N.D. Cal. Sept. 2, 2014).  Likewise, in *In re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal.

UNITED STATES' STATEMENT OF INTEREST – 10

2012), the court held that allegations of bilateral "Do Not Cold Call" agreements among high-tech firms were sufficient to plead a per se violation of the Sherman Act.

An agreement among competing fast-food franchisees (e.g., a McDonald's restaurant and a Burger King restaurant) not to hire each other's employees could fall within this category. If the franchisees were actual or potential competitors for employees, such a restraint would be a horizontal agreement and, if not ancillary to any legitimate and procompetitive joint venture, would be per se unlawful. The same is true if franchisees operating under the same brand name agreed amongst themselves (and wholly independent from the franchisor), for example, not to hire any person ever previously employed by another franchisee that is a party to the agreement. Such a naked horizontal market-allocation agreements among franchisees would be subject to the per se rule. *See, e.g.*, *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 57 n.28 (1977) (applying the rule of reason to vertical restraints imposed by franchisor on franchisees, but recognizing that "horizontal restrictions originating in agreements among the retailers . . . would be illegal *per se*" (citing *United States v. Gen. Motors Corp.*, 384 U.S. 127 (1966))).

## 2. Most franchisor-franchisee restraints are subject to the rule of reason

The per se rule does not apply to all no-hire and no-solicitation agreements, however. The franchise relationship is in many respects a vertical one because the franchisor and the franchisee normally conduct business at different levels of the market structure. Restraints imposed by agreement between the two are usually vertical and thus assessed under the rule of reason. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018).

For example, territorial allocation agreements are common in franchise and analogous relationships. They serve to limit geographically "the number of sellers of a particular product competing for the business of a given group of buyers." *GTE Sylvania*, 433 U.S. at 54. A restriction of this type is said to restrain "intrabrand" competition because, in the parlance of a manufacturer-distributor relationship, it limits "competition between the distributors . . . of the product of a particular manufacturer." *Id.* at 51 n.19. It often does so, however, to the benefit of interbrand competition "by allowing the manufacturer to achieve certain efficiencies in the distribution of his products" and, in "a number of ways," "to compete more effectively against other manufacturers." *Id.* at 54, 55. This potential procompetitive benefit is a significant one—interbrand competition "is the primary concern of antitrust law." *Id.* at 51 n.19; *accord Am. Express*, 138 S. Ct. at 2290. Accordingly, because vertical territorial allocation agreements may have both procompetitive and anticompetitive effects, courts evaluate their legality using the rule of reason's balancing approach. *GTE Sylvania*, 433 U.S. at 59.

In the franchise context, the typical no-hire or no-solicitation agreement between a franchisor and a franchisee precludes the franchisee from hiring or soliciting other franchisees' employees. Such a typical restriction is a vertical allocation agreement "limiting the number of [employers] competing for . . . a given group of [employees]," and its "anticompetitive effects . . . can be adequately policed under the rule of reason." *Id.* at 54, 59.

Even though the typical no-poach agreement between a franchisor and one of its franchisees is vertical, it could be horizontal if it restrains competition between the two interrelated entities. Specifically, a franchisor and one of its franchisees may

UNITED STATES' STATEMENT OF INTEREST – 12

actually or potentially "compete in the market in which the relevant employees are hired." 12 *Antitrust Law* ¶ 2012c, at 146.  If operating in the same geographic market, they both could look to the same labor pool to hire, for example, janitorial workers, accountants, or human resource professionals.  In such circumstances, the franchisor is competing with its franchisee, "notwithstanding that they do not compete in the market in which their goods or services are sold." *Id.*  If a complaint plausibly pleads direct competition between a franchisor and its franchisees to hire employees with similar skills, a no-poach agreement between them is correctly characterized as horizontal and, if not ancillary to any legitimate and procompetitive joint venture, would be per se unlawful. *Id.*

### 3.  Alleged hub-and-spoke franchise conspiracies are likely subject to the ancillary-restraints doctrine

The plaintiffs argue that the rule of reason is inapplicable because they are not challenging vertical restraints between the franchisor and its franchisees.  Instead, the plaintiffs argue, the challenged no-poach agreements are the products of horizontal hub-and-spoke conspiracies among each franchisor and its franchisees.  Their argument that the per se rule applies thus hinges on whether they have adequately pleaded hub-and-spoke conspiracies.

"A traditional hub-and-spoke conspiracy has three elements: (1) a hub, such as a dominant purchaser; (2) spokes, such as competing manufacturers or distributors that enter into vertical agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015) (citing *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010)); *accord,*

UNITED STATES' STATEMENT OF INTEREST – 13

*e.g.*, *United States v. Apple, Inc.*, 791 F.3d 290, 314 & n.15 (2d Cir. 2015); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 n.3 (6th Cir. 2008); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 934 (7th Cir. 2000) (term not used).

To state a claim based on a hub-and-spoke conspiracy, the complaint must plausibly plead both that there was a horizontal agreement among the "spokes," e.g. the franchisees, not to hire from each other, and that the franchisor "hub" agreed to participate in that horizontal agreement. Allegations of parallel conduct alone do not suffice to satisfy this requirement, and allegations of a defendant's mere knowledge of others' agreement does not plausibly plead the defendant's participation in it. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Musical Instruments*, 798 F.3d at 1193. Moreover, and contrary to the district court's holding in *Butler*, 331 F. Supp. 3d at 796, the mere fact that one franchisee may enforce no-hire provisions of a vertical franchise agreement against another franchisee does not create an actual agreement among competing franchisees. *See Twombly*, 550 U.S. at 564 (requiring allegations of "actual agreement" among competitors to state a Section 1 claim).

Allegations of a hub-and-spoke conspiracy usually follow one of two fact patterns. In the first, the plaintiff alleges that the hub "coordinate[d] an agreement among . . . the 'spokes,'" and the spokes agreed among themselves "'to adhere to the hub's terms,' often because the spokes 'would not have gone along with the vertical agreements except on the understanding that the other spokes were agreeing to the same thing.'" *Apple*, 791 F.3d at 314 (brackets omitted) (quoting 6 *Antitrust Law* ¶ 1402c, at 19-20 (3d ed. 2010)). This was the case in *Apple*, where the Second Circuit agreed the United States had proved that Apple, the hub, "orchestrated a

UNITED STATES' STATEMENT OF INTEREST – 14

1  conspiracy among the Publisher Defendants," the spokes, "to raise the price of

2  ebooks." *Id.* at 297, 305.

3  　　A plaintiff pleads the second common form of a hub-and-spoke conspiracy by

4  alleging that the spokes were the primary source of the restraint, agreeing among

5  themselves and then convincing the hub to enforce their horizontal agreement.  In

6  *General Motors*, for example, the Supreme Court reversed a defense judgment upon

7  finding the evidence proved that several car dealers' associations, the spokes, agreed

8  among themselves that no area dealer should be able to sell cars through so-called

9  "discount houses" and successfully lobbied manufacturer General Motors, the hub,

10  both to secure dealer commitments to that effect and enforce those commitments.  384

11  U.S. at 132-38, 140-41, 144-46.

12  　　If such a conspiracy is proved, "all [of its] participants [are] . . . liable when the

13  objective of the conspiracy was a *per se* unreasonable restraint of trade," including the

14  "vertical market participant."  *Apple*, 791 F.3d at 322, 323.  The vertical market

15  participant "has not only committed to vertical agreements, but has also agreed to

16  participate in the horizontal conspiracy."  *Id.* at 325.

17  　　The key to the per se illegal hub-and-spoke conspiracy is "the existence of a

18  'rim' to the wheel in the form of an agreement among the horizontal competitors."  *Id.*

19  at 314 n.15 (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002)).

20  By contrast, "[a] rimless wheel conspiracy is one in which various defendants enter

21  into separate agreements with a common defendant, but where the defendants have no

22  connection with one another, other than the common defendant's involvement in each

23  transaction."  *Dickson*, 309 F.3d at 203.  This "is not a single, general conspiracy" at

24  all, "but instead amounts to multiple conspiracies between the common defendant and

UNITED STATES' STATEMENT OF INTEREST – 15

1    each of the other defendants." *Id.* (citing *Kotteakos v. United States*, 328 U.S. 750,

2    755 (1946)).  Parallel but independent vertical agreements are not per se unlawful;

3    they are subject to the rule of reason.  *See id.* at 205-06.

4        Here, there is no indication that plaintiffs have successfully pleaded the

5    existence of a "rim" on which to base a "hub-and-spoke" conspiracy.  Even if they

6    did, however, these cases are distinguishable from the two examples describe above

7    because the typical franchise relationship itself is a legitimate business collaboration

8    in which the franchisees operate under the same brand.  No-poach agreements would

9    thus qualify as ancillary restraints if they are reasonably necessary to the legitimate

10   franchise collaboration and not overbroad.  *See, e.g.*, *Texaco Inc. v. Dagher*, 547 U.S.

11   1, 7-8 (2006); *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1395-98 (9th

12   Cir. 1984); *Aya Healthcare Servs. Inc. v. AMN Healthcare, Inc.*, No. 17cv205, 2018

13   WL 3032552, at *8-18 (S.D. Cal. June 19, 2018) (offering comprehensive review of

14   applicable law).  The rule of reason is therefore likely to apply.

15       **4.  When no-poach restrictions within a franchise system warrant rule of**

16           **reason analysis, they warrant full rule of reason analysis, not a "quick**

17           **look"**

18       When no poach restrictions within a franchise system warrant rule of reason

19   analysis, a full rule of reason analysis is likely necessary to weigh any anticompetitive

20   effects against potential justifications for these restraints.

21       Plaintiffs erroneously argue that if the Court declines to apply a per se rule, then

22   it should conduct an abbreviated, "quick look," rule of reason review that would

23   remove their burden of demonstrating harm to competition in a defined antitrust

24   market in order to satisfy their burden of proving a violation.  The "quick look,"

however, is not a part of the foregoing analysis.  If the plaintiffs have failed to plead

any agreement among the franchisees, then the plaintiffs have failed to plead a

horizontal agreement—and, as neither side disputes, quick-look analysis does not

apply to a vertical agreement between a franchisor and a franchisee.  If they have

pleaded an agreement among the franchisees, then the per se rule applies if the no-

poach agreement is a naked horizontal restraint, and the ancillary-restraints doctrine

helps to determine whether the horizontal agreement is naked.

In the latter situation where a court concludes that the no-poach agreement is

ancillary, then, by definition, quick look analysis is not appropriate.  The "quick-look

analysis" applies only in rare cases "when the great likelihood of anticompetitive

effects can easily be ascertained," and "it is not implausible" that procompetitive

benefits would outweigh harm to competition.  *Cal. Dental Ass'n v. FTC*, 526 U.S.

756, 770, 775 (1999).  Franchise no-poach agreements that are ancillary fall outside

the scope of this category because they may indeed provide procompetitive benefits

and promote interbrand competition.  *See id.*  Consequently, they do not fall into the

narrow category of restraints for which "the experience of the market has been so

clear, or necessarily will be, that a confident conclusion about the principal tendency

of a restriction will follow from a quick (or at least quicker) look, in place of a more

sedulous one."  *Id.* at 781.

To the extent other district courts have found otherwise at the pleading stage, *Yi*

Order at 9-10; *Butler*, 331 F. Supp. 3d at 797; *Deslandes*, 2018 WL 3105955 at *7-8,

this Court should not follow their reasoning for the reasons set forth herein.

1

**CONCLUSION**

2      For the foregoing reasons, the United States respectfully recommends that the

3  Court apply the above-discussed legal framework when it evaluates whether the

4  plaintiffs have stated a claim that the alleged no-poach agreements violate Section 1 of

5  the Sherman Act.

6      Dated:  March 7, 2019.            Respectfully submitted.

7

8                                       MAKAN DELRAHIM
                                          Assistant Attorney General
9                                       MICHAEL F. MURRAY
                                          Deputy Assistant Attorney General
10                                      WILLIAM J. RINNER
                                          Chief of Staff and Senior Counsel
11
                                        /s/ Mary Helen Wimberly
12                                      KRISTEN C. LIMARZI
                                        MARY HELEN WIMBERLY
13                                        Attorneys
                                        U.S. Department of Justice
14                                      Antitrust Division
                                        Appellate Section
15                                      950 Pennsylvania Avenue, N.W.
                                        Room 3224
16                                      Washington, D.C. 20530-0001
                                        Telephone: (202) 514-4510
17                                      maryhelen.wimberly@usdoj.gov

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2019, I caused to be delivered via the method listed below the document to which this Certificate of Service is attached (plus any exhibits and/or attachments) to the following:

| NAME & ADDRESS | METHOD OF DELIVERY |
|---|---|
| Craig J. Ackermann<br>Brian Denlinger<br>Ackermann & Tilajef, P.C.<br>2602 N. Proctor Street, Suite 205<br>Tacoma, WA 98406<br>cja@ackermanntilajef.com<br>bd@ackermanntilajef.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| David W. Kesselman<br>Kesselman Brantly Stockinger LLP<br>1230 Rosecrans Avenue, Suite 690<br>Manhattan Beach, CA 90266<br>dkesselman@kbslaw.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| India Lin Bodien<br>India Lin Bodien, Attorney at Law<br>2522 N. Proctor Street, #387<br>Tacoma, WA 98406-5338<br>india@indialinbodienlaw.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Robert A. Atkins<br>Adam J. Bernstein<br>Paul Weiss Rifkind Wharton<br>    & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>ratkins@paulweiss.com<br>abernstein@paulweiss.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Daniel J. Howley<br>Paul Weiss Rifkind Wharton<br>    & Garrison LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006-1047<br>dhowley@paulweiss.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

UNITED STATES' STATEMENT OF INTEREST – 19

| | |
|---|---|
| Angelo J. Calfo<br>Calfo Eakes & Ostrovsky PLLC<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101<br>angeloc@calfoeakes.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| John Ray Nelson<br>Foster Pepper PLLC<br>618 West Riverside Avenue, Suite 300<br>Spokane, WA 99201-5102<br>john.nelson@foster.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Bensy Benjamin<br>Lewis Brisbois Bisgaard & Smith LLP<br>1111 Third Avenue, Suite 2700<br>Seattle, WA 98101<br>Bensy.Benjamin@lewisbrisbois.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Michael J. Hines<br>Kelly E. Konkright<br>Reid G. Johnson<br>Lukins & Annis, PS<br>717 W. Sprague Avenue, Suite 1600<br>Spokane, WA 99201-0466<br>mhines@lukins.com<br>kkonkright@lukins.com<br>rjohnson@lukins.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Rudy J. Verschoor<br>Assistant U.S. Attorney<br>P.O. Box 1494<br>Spokane, WA 99210-1494<br>USAWAE.RVerschoorECF@usdoj.gov | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

/s/ Mary Helen Wimberly
MARY HELEN WIMBERLY
Attorney, U.S. Department of Justice

UNITED STATES' STATEMENT OF INTEREST – 20